# Buck *v.* Carlisle.

*Assumpsit for Money Had and Received.*

1. *Suit by one having the legal title.*—Where one pays money on a written contract for the purchase of an option in the name of a third person, an action to recover back such purchase price can not be maintained by the party paying the money, unless the contract has been assigned to him; and, not by such third person himself, until there has been an election by him to rescind.

2. *Beneficial owner; § 2594 of Code.*—A suit brought by a party claiming the beneficial ownership of a contract, can not be maintained under the provisions of § 2594 of the Code, since it is not one for the payment of money, nor can it be maintained on the assumption that the contract has been destroyed by rescission.

[Buck v. Carlisle.]

APPEAL from Marshall Circuit Court.

Tried before the Hon. JOHN P. TALLY.

Appellant, Samuel Buck, sued Carlisle in assumpsit for money had and received, to which the defendant pleaded the general issue. On the trial, plaintiff asked and obtained leave to file two additional amendments or counts, both in substance the same, and declaring upon an express contract to pay one J. F. O'Shoughnessey $500, upon the happening of a specified condition, which condition said counts alleged had happened. Said counts alleged further that plaintiff was the beneficial owner of said contract. Defendant demurred to each of said counts upon the following grounds, viz : (1.) That it was an entire departure from the original cause of action ; (2), they did not show that the contract had been assigned to plaintiff ; (3), that they did not show that plaintiff had such interest as would authorize him to maintain the suit ; (4), that said counts show that O'Shoughnessey alone, not plaintiff, could sue on said contract ; (5), it did not appear whether said contract was in writing or not; (6), they fail to aver that plaintiff is the official owner of the contract sued upon ; (8), that said counts show that said contract was upon a wager. The court sustained these demurrers, and its action is here assigned as error. The plaintiff then asked leave to file a fourth count, which alleged that the defendant had procured of the plaintiff $500 on an option on 2,735 and 17-100 shares of the capital stock of the T. & C. R. R. Co., which the defendant falsely and fraudulently represented to the plaintiff that he owned. The defendant objected to its being filed upon the ground that it was an entire departure from the original cause of action. The court sustained the objection, and this action of the court is here assigned as error. Prcoeeding to trial upon the original complaint, plaintiff offered in evidence a copy of a certain contract, dated February 24, 1888, and signed by Hugh Carlisle, for the "T. & C. R. R. Co. and for himself." The consideration for the contract was five hundred dollars in cash. The terms of the contract were briefly that it should not go into effect until the 1st day of March, 1888, and if the T. & C. R. R. Co. should, before that date, enter into any other contract with other persons for the loan of the money, or for the completion of the road, the five hundred dollars were to be refunded to J. F. O'Shoughnessey, in whose name the contract was taken. But if no such contract was made, then said O'Shoughnessey was to have the right for fifteen days after March 1st, 1888, to accept a contract with the T. & C. R. R. Co. by which O'Shoughnessey was to loan the said company $300,000 for

the term of five years, bearing six per cent. interest, said loan to be secured by the pledge of $365,000 worth of the bonds of said company, and also, by a mortgage on all of said company's property and franchises. The company, on its side, was to obligate itself to pay off the company's indebtedness with forty thousand dollars of this loan, and the balance thereof to apply to the construction and equipment of said road according to certain specifications. As a further security for said loan, Carlisle agreed to pledge his stock to said company which he represented, amounting to 2,735 and 17-100 shares. In said contemplated contract, said O'Shoughnessey was to have the right at any time, within six months after the completion of said road, to purchase it and all its equipments, and also the stock of said Carlisle at and for the sum of $200,000 in cash and one hundred thousand in first mortgage bonds of said company. Plaintiff testified that this copy was an exact copy of the original, having been compared by him with the original—that he left the original with Capt. D. D. Shelby, of Huntsville, who, after making diligent search, had failed to find it. Plaintiff also introduced testimony tending to show that plaintiff himself, and not O'Shoughnessey, purchased the option above set out, that plaintiff was present conducting the negotiations, and was present when the contract was signed, and that O'Shoughnessey was not present at any time, that he (plaintiff) paid the five hundred dollars out of his own private funds. That O'Shoughnessey had given plaintiff his consent to use his name in said transaction for the purpose of giving greater weight to plaintiff's efforts to negotiate a sale of said road. That O'Shoughnessey furnished no part of the money, and had no interest in the contract, or the five hundred dollars paid Carlisle. Plaintiff produced, and offered in evidence, the original contract, which was in words and figures identical with the copy. To the offering of the original, the defendant objected upon the ground that it could not be made a basis of recovery in this suit, and because there was no evidence of a rescision of said contract by O'Shoughnessey. The court sustained these objections, and this action of the court is here assigned as error. The plaintiff then offered to prove by Gen. S. K. Rayburn, that said Carlisle did not own 2,700 shares of the capital stock of said company, but that he owned but 1,100 shares. Defendant objected to this evidence upon the ground that it was immaterial and irrelevant. The court excluded it, and this action of the court is now assigned for error. Plaintiff further offered to prove by said Rayburn, that after the execution of said contract by

[Buck v. Carlisle.]

Carlisle to O'Shoughnessey, and prior to the first day of
March, 1888, the T. & C. R. R. Co. contracted with one Bra-
mer and associates, of New York, for the completion of said
road, but to this evidence the defendant objected upon the
ground that it was immaterial and irrelevant. The court ex-
cluded it, and this action of the court is now assigned for
error. The evidence further tended to show that Carlisle, at
the time of the giving of the option, was without authority
to do so, contrary to what he represented. On all the evi-
dence, however, the court charged the jury, that if they be-
lieved the evidence they should find for the defendant. This
action of the court is also assigned for error.

BROWN & STREET, for appellant.

AMOS E. GOODHUE, and WATTS & SON, for appellee.

McCLELLAN, J.—Samuel Buck, the plaintiff below and
appellant here, and Milton Humes paid Hugh Carlisle five
hundred dollars for an option to accept and enter into a
certain contract with the Tennessee and Coosa Rivers Rail-
road Company at any time during a period of fifteen days,
the period to begin at a specified date in the future. This
arrangement was made on the part of Buck and Humes in
the name of James F. O'Shaughnessy, and the agreement,
in writing, of Carlisle was to hold open and extend to
O'Shaughnessy for the period mentioned the privilege of
accepting and entering into the contract, all the terms of
which are set forth in the writing, with the company ; but
the evidence adduced on the trial below goes to show that
O'Shaughnessy in reality had no interest in the agreement
for the option and was to have none in the contemplated
final contract, but that Buck and Humes with his consent
used his name in the transaction. Two thirds of the five
hundred dollars was paid by Buck, and the remaining one
third by Humes. The agreement for the option was entered
into by Buck and Humes and the consideration therefor was
paid by them upon the assumption and representation by
Carlisle that he owned a controlling interest in the stock of
the railroad company and also was fully invested with power
and authority to bind the company in the terms which the
contemplated contract was to embody. It transpired that
all this was otherwise than as so assumed and represented;
that in point of fact Carlisle did not own a majority of the
stock and was wholly without authority to bind the corpo-
ration in the manner proposed, and hence that the obliga-

[Buck v. Carlisle.]

tion nominally made by him to O'Shaughnessy was wholly incapable of performance. Upon the theory that the consideration for which the five hundred dollars were paid had failed, or was utterly wanting, and that he as beneficial owner of the claim of Humes for the one third of that sum paid by the latter, Buck alone brings this action in assumpsit for the recovery of the whole. On the trial many rulings were made adversely to the plaintiff on the competency of testimony, and the sufficiency of two special counts added by amendment to the complaint which originally contained only the common count for money value received, and on plaintiff's right to file a 4th count setting up fraud, misrepresentations, &c. &c., on the part of Carlisle as the basis for recovery of the money paid on the contract which by these undue means he was induced to enter into. On the view we take of the case it will not be necessary to consider these rulings in detail. So far as they were prejudicial to the plaintiff, or rather such of them as were prejudicial, they, as also the court's action in giving the affirmative charge for the defendant, were based on the idea that the contract had been made by plaintiff in the name and as the agent of O'Shaughnessy, that there was no evidence of a transfer of it by the latter to the plaintiff and none that O'Shaughnessy had ever elected to rescind it, and that until there was an election to rescind by O'Shaughnessy, neither he nor the plaintiff could maintain assumpsit for the money paid in consideration of Carlisle's undertaking. The record fully supports this position in the matters of fact involved in it. The contract was made, as we have seen, by Buck and Humes, or by Buck, Humes paying a part of the money, in the name of O'Shaughnessy. Certainly as between them and O'Shaughnessy on the one hand and Carlisle on the other they were the mere agents of O'Shaughnessy; it does not appear that Carlisle knew aught to the contrary. It is not pretended that O'Shaughnessy has ever transferred the contract to Buck, or that he has rescinded it. If the conclusion drawn by the trial court from these facts is a sound one Buck can not recover in this action at all on the case he fully developed in the evidence, and whether the court erred or not in other rulings would be immaterial since the defendant was, on these assumptions, entitled to the affirmative charge given by the court on the merits of the case. We think the conclusion was sound. So long as the contract stood in the name of O'Shaughnessy, that is, until he transferred and assigned it, which he had not done when this suit was brought nor when the trial was had, he undoubtedly had the right

Vol. 98.

[Buck v. Carlisle.]

to maintain an action in his own name against Carlisle for the breach of it shown in the evidence offered by the plaintiff, and to recover in such action damages therefor. In such action one item of damage would be the five hundred dollars paid for the option. Carlisle would be precluded by the writing to say that this sum was received from and belonged to Buck. Whatever transpired meantime between him and Buck in regard to it, this litigation and all possible results of it included, would be *res inter alios acta* so for as O'Shaughnessy might be concerned. Full payment of the sum by Carlisle to Buck, upon the coercion of judgment and execution or otherwise, would afford him no defense to O'Shaughnessy's action. If the present suit is maintainable, in other words, Carlisle may be compelled to repay this sum twice over—once to Buck, because the latter paid it to him in the name of O'Shaughnessy, and again to O'Shaughnessy, because Buck ostensibly—and really so far as Carlisle was concerned—as the agent of O'Shaughnessy entered into a written contract in the latter's name with Carlisle. This demonstrates what absurd and unconscionable results the maintenance of the present suit would admit of. It is to avoid just such results that the law interdicts suits to recover back money paid on a contract where the consideration has failed until that party to the contract in whom the election rests has determined whether he will rescind the contract and brings assumpsit for the money paid, or will hold the other party to the contract and bring an appropriate action, which assumpsit is not, sounding in damages for the breach of it. Buck could not rescind this contract. O'Shaughnessy, who could, has not rescinded it.. On this state of the case Buck can not recover, and the court did not err in giving the general affirmative charge for the defendant; and this ruling would have been equally free from error had all the evidence offered by the plaintiff, and at first admitted, been allowed to remain with the jury.

Something is said in briefs of counsel about the beneficial ownership of this contract being in the plaintiff, and to the effect that for that reason he is entitled to maintain this suit under section 2594 of the Code. There are several reasons for denying all advantage to plaintiff based on this consideration. One is that the contract is not one for the payment of money, and hence is not within that section. Another is that the present action is not based on the contract at all, but proceeds on the assumption that the contract has been destroyed by rescission. And yet another is that a contract can not be rescinded efficaciously except by the parties to

it—those bound by its terms whether original parties or transferrees—not persons having no connection which the law recognizes, with the writing, but merely some beneficial interest in its terms.

The judgment must be affirmed.