This is an appeal from an order requiring appellant, Stewart C. Moody (hereinafter Moody), to convey certain property to his wife, Charla Joyce Johnson Moody, appellee herein. This order was issued pursuant to a divorce decree rendered April 1, 1974.
The record reflects the following:
On August 31, 1964, the appellant became the holder of what is best described as a license to use certain land owned by Alabama Power Company, to wit, Lot No. 216 on Martin Lake. Subsequent to acquisition of the recreational site, a cabin was built thereon. Thereafter in April of 1973, Moody declared bankruptcy, and as a fee for representing him in the bankruptcy proceedings, on March 28, 1973, Moody attempted to convey his interest in the cabin to his attorney, The Honorable Matthis W. Piel.[1] The property was listed in Moody's schedules filed in the bankruptcy proceedings.
The "recreational site agreement" between Moody and Alabama Power stated:
 "13. The Licensee shall not transfer his license nor any interest therein nor sub-let the land herein described nor permit anyone to occupy or use said land or any of the buildings, structures or facilities thereupon without the written consent of the Licensor, and in any and all events each and every one of the terms, conditions and covenants of this license governing the use and occupancy by the Licensee shall apply to invitees, the Licensee being responsible to the Licensor for all the acts of the invitees in the event that such invitees breach any of the covenants, terms, or conditions of this *Page 1032 
license. The Licensee warrants that at all times the full title to all the buildings and facilities placed upon the licensed premises shall be exclusively held by him, and that he will create no encumbrances upon his title to such buildings and facilities."
Alabama Power's consent to the transfer from Moody to Piel was never obtained.
In October of 1973, appellant and his wife separated. The wife's attorney on January 11, 1974, drafted a letter of proposed settlement in which it was suggested that the lake cabin be sold and the proceeds used in satisfaction of one of her debts. This letter was sent to Moody's attorney, Piel, and on January 21, 1974, Piel recorded in the Elmore County Probate office the bill of sale which purported to convey the cabin to him. Apparently, there was no response to the letter of proposed settlement.
The wife filed her petition for divorce on January 28, 1974. Appellant Moody having failed to answer the complaint by March 27, 1974, a default judgment was entered against him on that date. On April 1, 1974, a final decree of divorce which awarded the Lake Martin lot and cabin to the wife was rendered.
Thereafter, appellant through his attorney filed a motion for a new trial. This motion was denied on May 9, 1974. Moody then filed a petition to modify the final decree of divorce. Appellant in this petition prayed only for a reduction of alimony and child support payments. He made no mention of setting aside the award of the cabin to his wife, although it was at the hearing on this petition to modify that he first introduced evidence of his transfer of the cabin to Piel. Specifically, Moody in response to a question by his attorney Piel stated that in return for representation at the bankruptcy proceeding: "I signed my half interest of the lake place over to you."
On the other hand, appellee at this June 4, 1974, proceeding testified that the appellant had told her that the transfer to Piel was a method of preserving the cabin from the creditors' claims in the bankruptcy proceeding.
The court on September 16, 1974, pursuant to testimony adduced at the June 4 hearing, did reduce the monthly child support payable by appellant but refused to modify the April 1 divorce decree in any other respect.
Approximately one year later, the appellee still had received neither an assignment of the recreational site agreement nor a conveyance of certain other real property awarded by the decree. She then on May 14, 1975, filed a motion requesting that the deputy register be directed both to convey the real property and also to effect an assignment of the license agreement with Alabama Power.
A hearing on this motion was conducted on December 12, 1975, at which time the "recreational site agreement," the "bill of sale" purporting to transfer the cabin to Piel, and certain other instruments and testimony were introduced into evidence. Pursuant to this hearing, the trial court on December 22, 1975, made the following findings of fact:
 "6. That the Bill of Sale or document proporting [sic] to convey from Stewart C. Moody to Matthis W. Piel, interest in said lot was never recognized as being valid by the licensor, Alabama Power Company.
 "7. The lot and cabin in question, have apparently been used openly and exclusively by the wife and the children in her custody for the past year or so.
 "The Court having heard arguments from counsel on the effectiveness of the transfer of interest from the husband to his attorney, M. Piel, the Court finds that the `Bill of Sale' from Mr. Moody to Mr. Piel not having been recognized by licensor. Alabama Power Company, and being contrary to the license provision of Alabama Power Company . . . is of no effect and cannot be binding on any of the parties or the Alabama Power Company."
Moody's January 21, 1976, motion for a new trial was denied on March 1, 1976, and he thereafter prosecuted this appeal. *Page 1033 
Appellant has been represented at each of the aforementioned proceedings, as he is on this appeal, by Matthis W. Piel. The contentions of appellant upon appeal are threefold: (1) The court erred in allowing evidence to be submitted only by affidavits at the December 12, 1975, hearing. (2) The decree ordering transfer of the cabin and assignment of the license to Charla Moody was invalid in that a necessary person, i.e., Matthis W. Piel, was not made a party to the litigation. (3) Charla Moody, not being a party to or in privity with the contract between Alabama Power and appellant Moody, cannot sue for its breach; and as she is a stranger to the contract, she cannot take advantage of any breach thereof.
Before proceeding to a discussion of these issues, a preliminary matter to which both parties referred in brief should be addressed. Appellant contends that close scrutiny of the recreational site agreement between Alabama Power and himself manifests an intent of the parties that the cabin remain personal property; and, hence, the instrument set forth in footnote One, supra, is sufficient in law to transfer his interest to Piel. Appellee, however, argues that perusal of the recreational site agreement warrants finding that the appellant's interest in the cabin is real property. Consequently, the conveyance to Piel is void since the instrument fails to comply with the statutory requirements enumerated in Code of Alabama, Tit. 47, § 22, et seq.
We make no decision with respect to the preceding. For irrespective of whether appellant's interest in the cabin and lot is deemed personalty or realty, his conveyance of that interest without the written consent of Alabama Power violates the terms of his agreement with the latter. An assignment may be invalid as between the parties thereto if obtaining the consent of the licensor or lessor appears to be a condition precedent to the effectiveness of the assignment. 148 A.L.R. 1361, 1365, and cases cited therein. Here, reviewing the evidence with the attendant presumption of correctness, the trial court did not err to reversal in finding the attempted conveyance from Moody to Piel invalid for failure to comply with the express terms of the recreational site agreement. Stated differently, here in this instance, compliance with the terms of the agreement may be viewed as a condition precedent to making an effective transfer.
Appellant's first argument on appeal — that the court erred in allowing evidence to be submitted only by affidavit — is unsupported by the transcript of evidence. We quote from the transcript:
 "THE COURT: Mr. Piel, do you want to offer some oral testimony about your own knowledge of —
 "MR. PIEL: That's what I have offered, I have already offered my testimony.
 "THE COURT: Then I will accept it as that and accept it as sworn to as far as that is concerned."
It is readily apparent that evidentiary matters were not limited solely to affidavits. Moreover, appellant made no objections whatsoever to the trial court in regard to presentation of evidence. It is well established in Alabama that matters not objected to in the trial below cannot be objected to for the first time on appeal. Henley v. Boswell,55 Ala. App. 414, 316 So.2d 342. Accordingly, appellant's first contention is without merit.
Appellant's second argument upon appeal is based on unique circumstances. Moody, through his attorney Piel, contends that appellee's failure to join Piel as a party defendant to the April 1, 1974, divorce proceeding invalidates that portion of the decree ordering him to transfer his interest in the lake lot and cabin to appellee. The basic principle underlying this joinder argument is that a court should not adjudicate an individual's rights in his absence and without giving him the opportunity to be heard. Calcote v. Texas Pac. Coal Oil Co., 5 Cir., 157 F.2d 216, cert. den. 329 U.S. 782, 67 S.Ct. 205,91 L.Ed. 671.
However, in the instant case the mandates upon which the joinder requirement is predicated have been fulfilled. Here, Piel cannot claim lack of notice with *Page 1034 
respect to the disposition of the claimed interest in the cabin. He has represented appellant Moody throughout the proceedings below. Nor can he claim that he has not been heard. Indeed, he was physically present at the two principal hearings (June 4, 1974, and December 12, 1975) in which matters pertinent to a determination of proper title to the cabin and lot were heard. Moreover, Piel himself gave testimony at the December 12, 1975, hearing. A close examination of Rule 19, ARCP, implies that a person should be joined as a party, in the first instance, if he is absent and, further, that the failure to so join is prejudicial to such person. In this instance, Piel was not absent within the contemplation of the rule and to this court was not prejudiced by the failure to be added as a party.
According to Moore, IB Moore's Federal Practice § 0.411 (6) 2nd Ed. (1974) at 1552:
 "If a non-party who thus participates in litigation has an interest sufficiently close to the matter in litigation, and has adequate opportunity to litigate in support of or in defense against the cause of action on which the suit is based, the policies . . . require that the participating non-party should be bound by the resulting judgment to the same extent as though he were a party to the action. . . ."
Thus, the fact that one has not been technically joined as a party of record does not preclude his being bound by a judgment, if he had a sufficient interest in the suit and participated in and controlled the litigation. Southern MotorsCorp. v. Gayle Motor Co., 207 Ala. 358, 92 So. 784; White HallBldg. Corp. v. Profexray Div. of Litton Industries, D.C.,387 F. Supp. 1202; Esco Corp. v. Tru-Rol Company, Inc., D.C.,352 F. Supp. 416, aff'd 4 Cir., 489 F.2d 699.
If one need not be joined as a party to be bound by the judgment, it necessarily follows that the proceeding rendering that judgment is not invalid and need not be set aside for non joinder where the interested person was present, gave testimony, and exerted substantial control over the litigation.
Appellant's third contention is likewise without merit. It is true in Alabama as a general principle of law that a stranger to a contract cannot sue for its breach. Twine v. LibertyNational Life Insurance Co., 294 Ala. 43, 311 So.2d 299; Watsonv. Mills, 275 Ala. 176, 153 So.2d 612. Here, however, appellee does not institute this action as a suit for breach of contract. Rather, the matter arises incident to a divorce proceeding in which the court has jurisdiction over both parties. It is an established maxim that equity, having assumed jurisdiction upon invocation of the parties, will determine all the interrelated equities of the whole. Owens v. Owens,281 Ala. 239, 201 So.2d 396.
Thus, appellee is neither suing for breach of the contract, nor is she seeking to take advantage of the breach of a condition therein. Rather, it is the court in the necessary exercise of its power in determining the property rights of the parties before it which is relying upon a breach of the contract.
In reaching this decision we do not seek to reverse or ignore the general tenets enumerated in Twine and Watson, supra. This holding must be limited to the specific facts herein. Where parties have properly invoked the jurisdiction of the court in a divorce proceeding, the court will not be precluded from adjudicating their respective property rights on the ground that doing so requires interpretation of a contract between one of the parties to a divorce proceeding and a third party, where that third party's interests are not adversely affected.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.
[1] The conveying instrument was properly notarized and, in addition to Moody's signature, contained the following:
"KNOW ALL MEN BY THESE PRESENTS: That I, Stewart C. Moody, for and in consideration of the sum of One Hundred and NO/100 Dollars, and other valuable considerations in hand paid, the receipt whereon is hereby acknowledged, do hereby GRANT, BARGAIN, SELL, CONVEY AND DELIVER to Matthis W. Piel all property of every kind and description located on the following described property: The full consideration is $1,500.00
"Lot No. 216 Lake Martin
"WARRANTED free and clear of all encumbrances." *Page 1035