This is a boundary line dispute between coterminous landowners in an established subdivision, involving the common line that separates Lot No. 7, owned by the appellant, Doris Ruth Rogers, from Lot No. 8, owned by the appellee, Bonita Moore. Ms. Rogers has owned and lived on her lot since 1969; Ms. Moore moved onto her property in 1973. In 1983, Ms. Rogers, using the correct eastern corners of her lot, built a "bow-shaped" fence that extended several feet onto Ms. Moore's lot. In other words, at both ends of the line that separates the two lots according to the recorded subdivision plat, the fence was correctly positioned and anchored; but, due to its "bow shape," the fence, at a point midway between its two ends, crossed the line onto Ms. Moore's lot to a depth of approximately six feet.
Ms. Rogers claims to own the "disputed" property by adverse possession, contending that, at all times from 1969 until Ms. Moore objected to her fence in 1983, she had used the 10-foot strip between their common boundary line and Ms. Moore's house, and that the fence built in 1983 enclosed only that portion of the property used openly, hostilely, exclusively, and continuously by her for more than 10 years. Ala. Code 1975, § 35-3-3. Her testimony, as well as the testimony of several of her witnesses, was to the effect that for a portion of this time she maintained a roadway between the two houses, using a portion of Ms. Moore's lot, and that she maintained the yard between them by mowing the grass "all the way to" Ms. Moore's house.
Ms. Moore, on the other hand, testified that she had no idea that Ms. Rogers was claiming, as her own, any property beyond the line shown on the subdivision plat until Ms. Rogers built the fence in 1983. Ms. Moore had no objection to the placement of the fence at either end of their common boundary line, but it was the 5'8" intrusion, caused by the "bow shape" of the fence, to which she objected.
Because Ms. Rogers would not move the fence, Ms. Moore sued to "fix" the line between them. The trial court, with the approval of the parties, appointed a surveyor, who, upon surveying the contested line, found the original subdivision pin placements at each end of the common dividing line and ran a straight line between the pin placements, as that line was shown on the recorded plat of the subdivision.
The trial court rejected Ms. Rogers's claim of adverse possession and ordered the boundary line fixed according to the court-ordered survey. (Ms. Moore's own surveyor, who testified at trial, had found the same pins, and thus the same boundary line, as did the court-appointed surveyor.) The judgment appealed from provides:
 "The Court finds that the attached survey dated December 5, 1986, by M.D. Waldrup, Jr., of Jones, Blair, Waldrup Tucker, Inc. [the court-appointed surveyor], represents the true and correct boundary line between Lots Seven and Eight, Block Number Ten of Mountain Brook Addition Number Three as recorded in Plat Book 'E,' Pages 80-81 in the Judge of Probate Office of Etowah County, Alabama."
On appeal, Ms. Rogers raises two issues: 1) Whether the trial court's judgment complied with Ala. Code 1975, § 35-3-3, which requires that "The judgment shall locate and define the boundary lines involved by reference to well-known permanent landmarks," and 2) whether the trial court erred in rejecting Ms. Rogers's adverse possession claim. *Page 124 
Ms. Rogers contends that "[T]he judgment in this cause makes no effort to describe in a reasonably definite and certain fashion the boundary line between the two parties. It also should be noted that the court-ordered survey merely shows a line between two lots, does not disclose the location of the houses of the parties, nor does it tie in with the United States Government Survey or any section lines as set forth by said survey."
In regard to issue No. 1, Ms. Rogers invites our attention toLimbaugh v. Comer, 265 Ala. 202, 204, 90 So.2d 246 (1956), for the following proposition:
 "A decree establishing the location of a boundary line between the lands of coterminous owners must be reasonably certain within itself or by reference to the pleadings, evidence, or documents filed in the cause, and the decree must be so certain that the line may be located and marked by an officer of the Court who may be appointed to so mark the line without reference to extrinsic evidence or the use of his own discretion or by drawing his own conclusions as to any fact determinant of the true location of the line.
 "Where the decree refers to a survey without more in undertaking to describe a boundary line, the decree is not sufficiently certain. . . ."
See, also, Ray v. Robinson, 388 So.2d 957 (Ala. 1980); Tidwellv. Strickler, 457 So.2d 365 (Ala. 1984).
The judgment appealed from, however, does more thanmerely refer to a survey; it attaches the referenced survey, which describes the boundary line with specific reference to "Mountain Brook Addition Number Three, as recorded in Plat Book E, pp. 80-81 in the Judge of Probate Office in Etowah County, Alabama." One experienced in such matters would have no difficulty in taking the description found in this judgment and locating the boundary line as found by the court. Indeed, the trial court's use of a court-appointed surveyor, who carried out the mandate of the court by locating and marking the line, and the court's attachment of this survey, referencing the recorded subdivision plat, could hardly have been more in compliance with the letter and spirit of § 35-3-3.
In support of her contention that the trial court erred in denying her adverse possession claim, Ms. Rogers stresses her proof of the element of hostility, quoting from Lilly v. Palmer495 So.2d 522, 527 (Ala. 1986):
 "The determinative question in an adverse possession case between coterminous landowners is whether the claimant has shown, by clear and convincing evidence . . . 'actual, hostile, open, notorious, exclusive and continuous' possession for 10 years."
Applying the "clear and convincing evidence" standard, the trial court was fully justified in denying Ms. Rogers's claims in view of Ms. Moore's testimony with respect to her use of the disputed area and her lack of notice that Ms. Rogers was claiming title to any property beyond the original property line between them. As the definition indicates, "hostility" is but one element; and, here, the trial court did not err in not being "clearly and convincingly" satisfied that Ms. Rogers's possession was "exclusive and continuous" for the requisite statutory period.
It is common knowledge that next door neighbors, in a residential subdivision setting, each use the other's property between them without attempting to define and respect with precision the common line that separates their respective lots. Indeed, such a practice is a natural incident of their congested environment; and those who choose a different course of conduct with respect to the use of their property build fences. Here, the trial judge was justified in concluding, as he obviously did, that any period of limitations, for adverse possession purposes, commenced its running with Ms. Rogers's construction of the fence in 1983; thus, Ms. Moore's objection to this intrusion was timely and thwarted Ms. *Page 125 
Rogers's claim of title by adverse possession.
AFFIRMED.
SHORES, ADAMS, HOUSTON and STEAGALL, JJ., concur.