This Court granted certiorari review to determine whether the Court of Civil Appeals erred in affirming the circuit court's summary judgment for Harold E. Holland, Jr., the defendant in an action filed by AmSouth Bank, N.A., that alleged that Mr. Holland was personally liable on a note executed by Mr. Holland but signed by him in his capacity as president of Holland's Cars, Inc. The issue is whether AmSouth presented substantial evidence that Holland's Cars is the instrumentality or alter ego of Mr. Holland.
For several years, Mr. Holland maintained with AmSouth a banking relationship pursuant to which AmSouth lent him money for use in his automobile sales business. In the summer of 1991, Mr. Holland had an installment loan and an executive line of credit with AmSouth; both were in default. Mr. Holland also owed money to AmSouth arising out of the settlement of a lawsuit between the parties. The debts owed by Mr. Holland to AmSouth were personal debts. *Page 156 
The parties discussed restructuring the debts, and AmSouth agreed to restructure the existing debts through execution of a note. Mr. Holland executed a 90-day note in the amount of $60,000, which was the total amount owed on the installment loan, the line of credit, and the judgment. Monique Miller, AmSouth's assistant vice president, testified that Mr. Holland agreed to attempt to sell certain real estate to satisfy the note, and that, if he could not sell the real estate, to secure the note with an equity line of credit lien on his house.
On September 4, 1991, Mr. Holland came to an office of AmSouth to sign the note. Ms. Miller was not in the bank at the time, and the note was given to Mr. Holland by a loan teller. The note did not have a typed signature line. Mr. Holland signed the note:
"Holland Cars, Inc.
"H.E. 'Bubba' Holland, Jr., Pres."
Subsequently, upon seeing the signature, Ms. Miller called Mr. Holland to inquire. Mr. Holland stated that he needed the note to be in the name of the corporation that he was in the process of forming. Ms. Miller agreed to accept the note in the corporation's name, provided that Mr. Holland execute certain security agreements, including a personal guaranty. The documents were forwarded to Mr. Holland for his signature. Before the documents were returned, the proceeds from the note were applied by AmSouth to the personal debts owed to AmSouth by Mr. Holland. Mr. Holland never executed the security agreements or a personal guaranty for the note. On December 3, 1991, the note matured, but it has not been paid.
On March 25, 1992, AmSouth brought an action against Mr. Holland for the balance of the note and for interest and damages. As amended, AmSouth's complaint alleged that Mr. Holland was personally obligated to pay the note, because: Holland's Cars, Inc., the corporation Mr. Holland professed to represent, did not exist as of the date of the execution of the note; Holland's Cars, Inc., was the instrumentality or alter ego of Mr. Holland and this fact justified piercing the corporate veil and imposing personal liability; and Mr. Holland owed AmSouth the balance of the note on the theory of money had and received. In the alternative, AmSouth alleged that Holland's Cars, Inc., was liable for the balance of the note. Mr. Holland moved for a summary judgment, alleging that he was not personally liable on the note because it was signed only in his official capacity and for the corporation. AmSouth moved for a summary judgment on the grounds alleged in its complaint. The circuit court granted Mr. Holland's motion and granted AmSouth's motion only as to the defendant Holland's Cars, Inc.
AmSouth appealed to this Court; this Court transferred the case to the Court of Civil Appeals, pursuant to § 12-2-7(6), Ala. Code 1975. The Court of Civil Appeals affirmed the circuit court's holding: that AmSouth "could not deny the existence of Holland's Cars, Inc., as a corporation after the Bank dealt with it as a corporation"; that AmSouth should not be allowed to pierce the corporate veil; and that Mr. Holland was not liable for "money had and received." AmSouth Bank, N.A. v.Holland, 669 So.2d 151, 154 (Ala.Civ.App. 1994). In its petition for the writ of certiorari, AmSouth argued that the Court of Civil Appeals' decision is in conflict with decisions from this Court concerning the "alter ego" theory of piercing the corporate veil and concerning the doctrine of money had and received.
A corporation is generally regarded as a legal entity separate from its directors, officers, and shareholders; therefore, those persons are generally not individually liable for the debts of the corporation. Cohen v. Williams, 294 Ala. 417, 318 So.2d 279 (1975). However, a separate legal existence will not be recognized when a corporation is "so organized and controlled and its business conducted in such a manner as to make it merely an instrumentality of another," Forest HillCorp. v. Latter Blum, 249 Ala. 23, 28, 29 So.2d 298, 302
(1947), or when it is the "alter ego" of the person owning and controlling it. Whether the separate legal entity of a corporation may be "pierced" and personal liability imposed is "a question of fact treated as an evidentiary matter to be determined on a case by case basis." Messick v. Moring,514 So.2d 892, 893 (Ala. 1987); accord Deupree v. Ruffino,505 So.2d 1218 (Ala. 1987). *Page 157 
In this case, the Court of Civil Appeals held that the circuit court did not err in concluding, as a matter of law, that Mr. Holland could not be held personally liable for the debt of Holland's Cars, Inc. One of AmSouth's arguments to the Court of Civil Appeals was that Mr. Holland should be held individually liable on the note because, when he signed the note as a representative of Holland's Cars, Inc., the corporation did not yet exist. The court concluded that there was a "corporation by estoppel" created by the conduct of the parties, and, therefore, that AmSouth "could not deny the existence of Holland's Cars, Inc., as a corporation after the Bank dealt with it as a corporation." 669 So.2d at 154. Similarly, in addressing the issue whether Holland's Cars, Inc., was the instrumentality or alter ego of Mr. Holland, the court concluded that AmSouth "should not be allowed to pierce the corporate veil," because AmSouth had allowed Mr. Holland to sign in a corporate capacity and because AmSouth had applied the proceeds of the note to Mr. Holland's individual debts without first obtaining a personal guaranty and without an inquiry regarding the corporation. The court then citedCo-Ex Plastics, Inc. v. AlaPak, Inc., 536 So.2d 37 (Ala. 1988).
In Co-Ex Plastics, this Court addressed whether the under-capitalization of a corporation was a ground upon which to pierce the corporate veil and to hold the sole shareholder of the corporation personally liable for the corporation's debts. This Court noted that, absent "additional compelling facts," under-capitalization of a corporation would not justify piercing the corporate veil. 536 So.2d at 39. The Court found no such facts, because the plaintiff had not inquired into the financial status of the corporation and had not asked for a personal guarantee from the corporation's sole shareholder. The Court stated:
 "Voluntary creditors of corporations are held to a higher standard because they 'are generally able to inspect the financial structure of a corporation and discover potential risks of loss before any transaction takes place. Consequently, courts are less sympathetic with voluntary creditors who, having had the opportunity of inspection, nevertheless elected to transact with an undercapitalized corporation.' "
536 So.2d at 39 (quoting Disregarding the Entities of CloselyHeld and Parent-Subsidiary Corporate Structures, 12 Cumb. L. Rev. 155, 165 (1981)).
In this case, the Court of Civil Appeals essentially reasoned that AmSouth, at its own risk, had allowed Mr. Holland to sign in a corporate capacity and that, because it applied the proceeds of the note before it received a personal guaranty from Mr. Holland, AmSouth should now be precluded from asserting that Mr. Holland is personally liable on the note. Thus, the Court of Civil Appeals concluded that Mr. Holland was entitled to a judgment as a matter of law. The holding inCo-Ex Plastics does not require such a conclusion. Co-ExPlastics does not stand for the proposition that a person who knowingly, or without sufficient inquiry, transacts with an undercapitalized corporation is thereafter precluded from piercing the corporate veil. That fact may certainly militate against piercing the veil, but it does not preclude it. In addition, as discussed below, there may be "additional compelling facts" supplementing the fact that Holland's Cars, Inc., was undercapitalized, and the facts supporting the instrumentality or alter ego theory may be considered independent from, or in conjunction with, the undercapitalization of Holland's Cars, Inc. Thus, because this issue is a question of fact and is not controlled by Co-ExPlastics, this case must be resolved by applying the principles that govern evidentiary burdens relating to the summary judgment procedure.
We conclude that AmSouth presented substantial evidence creating genuine issues of material fact, and that Mr. Holland was therefore not entitled to a judgment as a matter of law. In response to Mr. Holland's motion for summary judgment, AmSouth submitted portions of Mr. Holland's deposition and an affidavit from Ms. Miller. The testimony established that Mr. Holland is the sole shareholder, sole director, and sole officer of Holland's Cars, Inc.; that Holland's Cars, Inc., has no financial records; that no business license was ever purchased for Holland's Cars, Inc.; that no bank account was *Page 158 
ever opened for Holland's Cars, Inc.; that no cars have ever been bought or sold through Holland's Cars, Inc., but that Mr. Holland has bought and sold 20-45 cars since the incorporation of Holland's Cars, Inc., in his individual name and under the trade name of "Holland's Cars for Stars"; and that Holland's Cars, Inc., assumed responsibility for Mr. Holland's personal debts without any consideration from Mr. Holland. These are all facts that may support the instrumentality or alter ego theory of piercing the corporate veil, and they are sufficient to preclude a summary judgment for Mr. Holland. Econ Marketing,Inc. v. Leisure American Resorts, Inc., 664 So.2d 869 (Ala. 1995); Simmons v. Clark Equipment Credit Corp., 554 So.2d 398
(Ala. 1989); Barrett v. Odom, May DeBuys, 453 So.2d 729 (Ala. 1984); TriState Building Corp. v. Moore-Handley, Inc.,333 So.2d 840 (Ala.Civ.App. 1976).
AmSouth also submitted evidence creating a genuine issue of material fact as to the circumstances in which AmSouth agreed to allow Mr. Holland to sign in a corporate capacity for a corporation that did not yet exist. There was testimony that, before the note was signed, the parties had agreed as to how Mr. Holland was to proceed in attempting to pay the note and that the bank agreed to allow Mr. Holland to sign in a corporate capacity only with the understanding that he would personally guaranty the note. Mr. Holland, however, testified that he did not receive certain correspondences from the bank regarding the manner in which the note was to be repaid, and did not offer an explanation as to why he did not execute the personal guaranty. Thus, there is a dispute between the parties as to material facts. These facts are material for several reasons. The facts are relevant to the theory of instrumentality or alter ego, because, if the facts are as AmSouth alleges, they would tend to show misuse of the corporation by Mr. Holland and to show inequity to AmSouth if the corporation is maintained as a separate legal entity,see Messick v. Moring, 514 So.2d 892 (Ala. 1987), Kwick SetComponents, Inc. v. Davidson Industries, Inc., 411 So.2d 134
(Ala. 1982). The facts may be relevant to distinguish Co-ExPlastics, because they may provide "compelling additional facts" from which the trier of fact may conclude that the undercapitalization of Holland's Cars, Inc., is a factor that suggests it would be proper to pierce the veil. Thus, AmSouth has presented substantial evidence creating genuine issues of material fact, and Mr. Holland was not entitled to a judgment as a matter of law.
As to the argument regarding money had and received, this Court has stated that "the burden is upon the plaintiff to show . . . that the defendant has in his possession money, which in good conscience and equity, belongs to the plaintiff." Wash v.Hunt, 281 Ala. 368, 371, 202 So.2d 730, 733 (1967) (citing Cityof Prichard v. Hawkins, 255 Ala. 676, 53 So.2d 378 (1951)). We have difficulty in fitting the facts of this case into an action for money had and received, because Mr. Holland does not have in his possession money belonging to AmSouth. The personal debts Mr. Holland owed to AmSouth were paid with the proceeds of a loan that was secured by a note payable to AmSouth, and AmSouth now seeks to collect on the note. AmSouth has cited no cases allowing an action for money had and received in such circumstances, and we have found none.
As to AmSouth's motion for summary judgment, we hold that the circuit court properly denied the motion as to the claims against Mr. Holland individually: those claims involve questions of fact that make a summary judgment inappropriate. However, there are no genuine issues of material fact as to whether Holland's Cars, Inc., is liable on the note, and AmSouth was thus entitled to a judgment against the corporation as a matter of law.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
MADDOX, SHORES, INGRAM, COOK, and BUTTS, JJ., concur. *Page 159